## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHRISTOPHER SEAMAN, | § | |
| | § | |
| Plaintiff, | § | CAUSE NO.  5:22-cv-874 |
| | § | |
| VS. | § | **COMPLAINT** |
| | § | JURY TRIAL DEMANDED |
| THE HERSHEY COMPANY, | § | |
| | § | |
| Defendants. | § | |
| | § | |

Plaintiff CHRISTOPHER SEAMAN, by and through her attorneys of record, The Lange Law Firm, PLLC and Gettys Law Group, and for cause of action against Defendant THE HERSHEY COMPANY, above-named complains, allege, and state as follows:

## I. PARTIES

1.      At all times relevant to this action, Plaintiff was a resident of the City of Shreveport, Caddo Parish, Louisiana.

2.      At all times relevant to this action, Defendant THE HERSHEY COMPANY, was a foreign corporation organized and existing under the laws of the state of Delaware with its principal place of business located at 19 E. Chocolate Avenue, Hershey, Pennsylvania 17033. Defendant can be served through its registered agent at C T Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA  70816-4378. Defendant manufactures, designs, formulates, prepares, tests, provides instructions, markets, labels, packages, distributes, sells, places into the stream of commerce and directs its Black Licorice Twizzlers food products into all fifty states, including Louisiana.

## II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between

1

citizens of different states, and because the defendant has certain minimum contacts with the State of Louisiana such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

4.      Venue in the United States District Court for the Western District of Louisiana is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims and causes of action occurred in this judicial district, and because the defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

### III. <u>BACKGOUND</u>

#### A.      *ABOUT BLACK LICORICE*

5.      In October 2017, the Food and Drug Administration (FDA) issued a statement that eating two ounces of black licorice per day for at least two weeks could prompt heart conditions in adults 40 and older.

6.      In 2013, a group of researchers from Chicago's Mercy Hospital and Medical Center, citing to various medical studies going as far back as to the 1970's, published a review in *Endocrinology and Metabolism* warning of the substantial threat that consumption of excess licorice posed to the cardiovascular system, including to the heart, due to the glycyrrhizin component contained therein.

7.      Defendant's Twizzlers black licorice contain the compound glycyrrhizin, which is the sweetening compound derived from licorice root. Glycyrrhizin can cause potassium levels in the body to fall. When that happens, it can cause abnormal heart rhythms (palpitations), as well as high blood pressure (hypertension ) , edema (swelling), lethargy, and congestive heart failure.

8.      Glycyrrhetic acid, the active metabolite in licorice, inhibits the enzyme11-ß-hydroxysteroid dehydrogenase enzyme type 2 with a resultant cortisol-induced mineralocorticoid effect and the tendency towards the elevation of sodium and reduction of potassium levels.

9.     Defendant's Twizzlers Black Licorice products contain licorice extract, containing Glycyrrhizin.

10.    The standard Black Licorice Twizzlers bag contains one pound (16 ounces) of black licorice.

11.    Defendant knew for years that its black licorice candy posed a health threat.

12.    Despite these known dangers, Defendant's bag contains no warnings that consumption of the black licorice product can lead to dangerously low potassium levels, abnormal heart rhythms (palpitations), as well as high blood pressure (hypertension), edema (swelling), lethargy, and congestive heart failure.

13.    Further, despite this knowledge, Defendant did not place any warnings on its products, nor change any of the dangerous ingredients contained therein.

### B.    *CHRISTOPHER SEAMAN'S INJURY AFTER INGESTING DEFENDANT'S BLACK LICORICE*

14.    On April 4, 2021, Christopher purchased two 1-pound bags of Defendant's Black Licorice Twizzlers from the Walgreens store located at 3555 Greenwood Road, Shreveport, LA 71109.

15.    Christopher ate both bags of Twizzlers within two days.

16.    On April 8, 2021, Christopher purchased two more 1-pound bags of Defendant's Black Licorice Twizzlers. He went home and ate half of one of the bags. The next day, he ate the rest of the first bag. He also opened and ate a bit of the black licorice from the second bag he bought the day prior.

17.    On April 9, 2021, Christopher's heart began to flutter. Christopher met with his primary care physician, who told him that his potassium levels were dangerously low and required hospitalization. Christopher's blood pressure was also elevated.

18.    Christopher's doctor told him that he was in dire risk of a heart attack or even death if they

didn't get his potassium back to normal levels.

19.     The doctors gave Christopher three IV bags of potassium. His physicians could not understand why his potassium levels were not normalizing.

20.     During his hospitalization, Christopher was worried and scared, so he asked his brother to bring him the remaining bag of Defendant's Black Licorice Twizzlers.

21.     After 5 days of treatment, Christopher's potassium levels still were abnormal. His physician referred him to an endocrinologist to help determine the cause.

22.     During his examination with the endocrinologist on April 20, 2021, Christopher discussed his diet. It was during this time that Christopher learned black licorice was the cause of his low potassium and heart palpitations.

23.     The Twizzlers black licorice had caused Christopher's dangerously low potassium, heart palpitations, and hospitalization.

### IV.  CAUSES OF ACTION

**COUNT ONE**
**LOUISIANA PRODUCTS LIABILITY ACT ("LPLA")**
**DESIGN DEFECT UNDER LSA-R.S. 9:2800.56**

24.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

25.     At all times material to this action, Defendant was responsible for producing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Black Licorice Twizzlers.

26.      Defendant's food product, Black Licorice Twizzlers, were defective and unreasonably dangerous to an extent beyond that contemplated by the ordinary consumer.

27.     Defendant's Twizzlers Black Licorice products were defective in their design or formulation in that they were not reasonably fit, suitable, or safe for their intended purpose and/or

its foreseeable risks exceed the benefits associated with its design and formulation.

28.    At all times mentioned herein, the food product was not safe or suitable for the purposes for which Defendant manufactured, produced, tested, packaged, promoted, marketed, distributed, labeled, and/or sold the Black Licorice Twizzlers or placed them into the stream of commerce.

29.    Black Licorice Twizzlers, sold to and eaten by the Plaintiff, were defective and unreasonably dangerous when they left the control of the Defendant in one or more of the following ways:

a)    Defendant's Twizzlers Black Licorice food products were dangerous and capable of causing injuries including without limitation dangerously low potassium, abnormal heart rhythms (palpitations), high blood pressure (hypertension), edema (swelling), lethargy, and congestive heart failure.

b)    The risks associated with use of Defendant's Twizzlers Black Licorice food products far outweighed the utility derived from using these food products;

c)    The ordinary consumer of Defendant's Twizzlers Black Licorice products would not have realized such dangers.

d)    Defendant failed to provide adequate warnings regarding the hazards associated with consuming Defendant's Twizzlers Black Licorice; and

c)    Defendant's product was defectively designed and unreasonably dangerous in design and composition in that other food products could achieve similar utility without the risks presented by Defendant's Twizzlers Black Licorice.

30.    In addition, at the time Defendant's Twizzlers Black Licorice products ingested by Plaintiff left the control of Defendant, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Mr. Seaman's injuries without impairing the reasonably anticipated or intended function of the product. These safer alternatives designs were

economically and technologically feasible and would have prevented or significantly reduced the risk of Mr. Seaman's injuries without substantially impairing the product's utility.

31.     As a direct and proximate result of Defendant's Twizzlers Black Licorice products' defective design, Mr. Seaman Christopher Seaman, suffered dangerously low potassium, hospitalization, injury, and damages.

## COUNT TWO
## LOUISIANA PRODUCTS LIABILITY ACT
## INADEQUATE WARNING UNDER LA. R.S. 9:2800.57

32.     As if fully set forth herein, Plaintiff incorporates by reference, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

33.     At all times material to this action, Defendant was responsible for producing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Black Licorice Twizzlers.

34.      Defendant's food product, Black Licorice Twizzlers, were defective and unreasonably dangerous to an extent beyond that contemplated by the ordinary consumer.

35.     Defendant knew, or in light of reasonably available knowledge, should have known that Defendant's Twizzlers Black Licorice products were dangerous and capable of causing injuries including without limitation dangerously low potassium, abnormal heart rhythms (palpitations), high blood pressure (hypertension ) , edema (swelling), lethargy, and congestive heart failure.

36.     The ordinary consumer of Defendant's Twizzlers Black Licorice products would not have realized such dangers.

37.     Defendant neglected to provide its customers, including Christopher Seaman, with any warning which could have been expected to catch the attention of a reasonably prudent person under similar circumstances who may have purchased Defendant's Twizzlers Black Licorice products. Furthermore, Defendant failed to provide warnings to its customers, including Christopher Seaman,

which could accurately advise him or an ordinary consumer of the scope, severity and likelihood of serious injury resulting from the ingestion of Defendant's Twizzlers Black Licorice products. Had such warnings been provided, Christopher Seaman would have avoided the risk of heart issues by not eating Defendant's Twizzlers Black Licorice products. As such, the severe injuries and/or damages sustained by Christopher Seaman could have been avoided.

38.     Defendant neglected to provide Christopher Seaman with adequate warnings to accurately advise him of the increased propensity for developing capable limitation dangerously low potassium, abnormal heart rhythms (palpitations), high blood pressure (hypertension), edema (swelling), lethargy, and congestive heart failure from consuming Defendant's Twizzlers Black Licorice products.

39.     As a direct and proximate result of Defendant's Twizzlers Black Licorice products' defective and inappropriate warnings, Christopher Seaman, suffered dangerously low potassium, hospitalization, injury, and damages.

## COUNT THREE
## LOUISIANA PRODUCTS LIABILITY ACT
## DEFECT IN CONSTRUCTION OR COMPOSITION UNDER LA. R.S. 9:2800.55

40.     As fully set forth herein, Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint.

41.     The characteristic of Defendant's Twizzlers Black Licorice products that renders them unreasonably dangerous in construction or composition existed at the time the product left the control of Defendant.

42.     Defendant sold and/or distributed Twizzlers Black Licorice products in a condition that posed unreasonable risks from reasonably anticipated use of the product. Defendant's Twizzlers Black Licorice products was expected to and did reach Christopher Seaman without substantial change in condition from the time that it left the control of Defendant.

43.    Defendant designed, researched, developed, tested, inspected, produced, manufactured, analyzed, merchandised, packaged, advertised, promoted, labeled, distributed, marketed, and/or sold Twizzlers Black Licorice products in a condition which rendered the product unreasonably dangerous due to its propensity to lead to the development of dangerously low potassium, abnormal heart rhythms (palpitations), high blood pressure (hypertension ), edema (swelling), lethargy, and congestive heart failure. As such, Defendant's Twizzlers Black Licorice products were unreasonably dangerous in construction and/or composition as provided for in La. R.S. 9:2800.55.

44.    As a direct and proximate result of Defendant's Twizzlers Black Licorice products' defects in composition and/or construction, Christopher Seaman, suffered dangerously low potassium, hospitalization, injury, and damages.

## COUNT FOUR
## LOUSIANA PRODUCTS LIABILITY ACT
## BREACH OF EXPRESS WARRANTY UNDER LA. R.S. 9:2800.58

45.    As if fully set forth herein, Plaintiff incorporates by reference, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

46.    At all times material herein, Defendant directly and indirectly manufactured, packaged, distributed, advertised, marketed, promoted, produced, supplied, and sold Defendant's Twizzlers Black Licorice products for consumer ingestion and placed the products in the stream of commerce. In doing so, Defendant expressly warranted to all foreseeable consumers of the food, including Christopher Seaman, that Defendant's Twizzlers Black Licorice products were safe for their intended purpose, human consumption.

47.    Plaintiff reasonably relied upon Defendant's skill, superior knowledge, and judgment upon the aforesaid express warranty provided by Defendant.

48.    Christopher Seaman's ingestion of Defendant's Twizzlers Black Licorice products was consistent with their intended purpose for which Defendant directly and indirectly advertised,

marketed, and promoted its products. Additionally, Plaintiff's ingestion of Defendant's Twizzlers Black Licorice products was reasonably contemplated, intended, and foreseen by Defendant at the time of the distribution and sale of food products by Defendant. Therefore, Christopher Seaman's ingestion of Defendant's Twizzlers Black Licorice products is within the scope of the express warranties issued by the Defendant.

49.     Defendant breached the express warranties because Defendant's Twizzlers Black Licorice products were not safe nor fit for its intended uses and purposes.

50.     As a direct and proximate result of Defendant's breach of expressed warranty, Christopher Seaman suffered, and will continue to suffer, severe injuries and/or damages.

51.     As a direct and proximate result of Defendant's Twizzlers Black Licorice products' breach of express warranties, Christopher Seaman, suffered dangerously low potassium, hospitalization, injury, and damages.

## V. **DAMAGES**

52.     As the direct and proximate result of Defendant's acts and omissions, Plaintiff suffered ordinary, incidental, and consequential damages as would be anticipated to arise under the circumstances, which shall be fully proven at the time of trial.

## VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

1) That Plaintiff be granted a trial by jury in this matter;

2) Awarding all general and compensatory damages allowable to Plaintiff including, but not limited to, pain, suffering, emotional distress, loss of enjoyment of life, and other noneconomic damages in an amount to be determined at trial of this action;

3)  Awarding all economic damages including, but not limited to, medical expenses, out of pocket expenses, lost earnings, and other economic damages in an amount to be determined at trial of this action;

4)  Awarding pre-judgment interest;

5)  Awarding post-judgment interest;

6)  Awarding Plaintiff's reasonable attorneys' fees;

7)  Awarding Plaintiff's the costs of these proceedings; and

8)  That the court award Plaintiff the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

9)  Grant Plaintiff such other and further relief as the Court deems just and proper.

### VII. JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues raised herein.

Respectfully submitted,

By: *&#95;/s/ Lawrence Gettys*
        _____
Lawrence Gettys, Bar Roll No. 23753
GETTYS LAW GROUP
9191 Siegen Ln #7
Baton Rouge, LA 70810
Telephone: (225) 484 - 6376
Email: lawrence@gettyslaw.com
www.gettyslaw.com

Jory D. Lange, Jr.
THE LANGE LAW FIRM PLLC
6300 West Loop South, Suite #350
Houston, TX 77401
Telephone: (833) 330-3663
Email: jory@jorylange.com
www.MakeFoodSafe.com
**ATTORNEYS FOR PLAINTIFF**